**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **H.C. with POWER OF ATTORNEY TO GLYNNDIA COOK** | § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § | **Civil Action No. 6:19-cv-640** |
| | | **Jury Trial** |
| **COPPERAS COVE INDEPENDENT SCHOOL DISTRICT,** | § § § | |
| **Defendant.** | § § | |

**PLAINTIFFS FIRST ORIGINAL COMPLAINT AND JURY DEMAND**

    **NOW COMES** H.C. by her mother, Glynndia Cook, in her capacity as Power of Attorney, (collectively "the Plaintiffs") and files this their *First Original Complaint and Jury Demand* alleging that the Copperas Cove Independent School District (hereinafter referred to as "Copperas Cove ISD", "CCISD" or the "School District"), violated the various rights of H.C. as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this tribunal the following:

## I. BRIEF INTRODUCTION TO THE CASE

1.   H.C. is now 18 years old. While H.C. was a student in CCISD, she was bullied, assaulted, and physically and sexually harassed numerous times by several male students. Both she and her mother reported these events repeatedly to CCISD school officials, but they were never investigated pursuant to federal law, rules, executive guidelines, or the School

District's own policies and procedures regarding allegations of bullying, harassment, and retaliation based on sex. Further, the School District failed to remediate the effects of the sexual harassment H.C. experienced.

2. Due to the incessant bullying, assaults, and physically and sexual harassment, H.C. experienced increased depression and anxiety. These effects were so intense that she commenced acts of self-harm and self-mutilation.

3. The vast majority of students who are bullied and harassed at school suffer in silence, each attending school with the simple hope and prayer that they will be left alone. It is well known across the professional education community that those who are not left alone, and continue to be victims of bullying and harassment, unfortunately turn their rage inward. They become angry, then depressed, just like what has occurred with H.C.

4. For families, there is nothing more disturbing than knowing that your child was a victim of sexual harassment which you and your child reported and complained about, but essentially nothing was done. It is especially frustrating and saddening when that child was not the first victim-but in fact rather one of many students victimized in a virtually identical manner, and that the school failed to do anything about it. But the fact is-this type of systemic problem and approach thereto doesn't just *stop.* So, to give meaning to their child's experience, these parents feel a duty to tell their story in hope that the illustration of their child's victimization will prevent the same from happening to another child and another family.  And by exposing the truth, these victims experience a sort of healing effect as well as a feeling of empowerment, which are even more pronounced, when they

share their story before a federal judge, where a bright light and sanitizing effect of federal

law and the Judge's attentions is focused on these important issues and CCISD's failures.

5.   Accordingly, Plaintiffs file this their *First Original Complaint and Jury Demand* and bring

forth claims pursuant to Title IX of the Educational Acts of 1972, 20 U.S.C. § 1681 et seq.,

and the 14th Amendment to the United States Constitution.

## II. JURISDICTION

6.   Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because

the matters in controversy arise under the laws and rules of the United States as noted

above.

## III.  VENUE

7.   Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions

giving rise to the Plaintiff's claims occurred in the Western District of Texas and in the

Waco Division.

## IV.  PARTIES

8.   H.C. is a citizen of the State of Texas and lives with her parent, Glynndia Cook in

Copperas Cove, Texas. They live within the Copperas Cove Independent School District

catchment area. At all pertinent times relevant to this lawsuit, H.C. was a pupil in the

Copperas Cove Independent School District and lived in Copperas Cove, Texas.

9.   Plaintiff Glynndia Cook is the natural mother of H.C. She is a citizen of the State of Texas

and is a resident of Coryell County, Copperas Cove, Texas. She brings forward this

complaint as the representative of H.C.

10. The Copperas Cove Independent School District is a school district organized under the laws of the State of Texas and, at all times is required to follow the policies and procedures as set forth by the School Board. District personnel are thus responsible for the care, management and control of all public-school business within its jurisdiction, as to Plaintiff H.C., the training of teachers at the School, as to safety, supervision of students within the district, and for the course of study. At all times pertinent to this case, H.C. was a student at the Copperas Cove Independent School District. The Copperas Cove ISD may be served by and through their Superintendent, Joseph Burns, Ed.D. at 703 W Ave D, Copperas Cove, Texas, 76522. Plaintiffs reasonably believe CCISD will be represented by the Honorable Bridget Robinson with the law firm of Walsh Gallegos Trevino Russo & Kyle, P.C. at 505 E. Huntland Drive, Suite 600, Austin, Texas 78752.

## V.   STATEMENT OF FACTS

### A.   ABOUT H.C.

11. H.C. was born on June 27, 2001. She is currently 18 years old and School District personnel knew she had a history of emotional distress.

### B.   2015-2016 SCHOOL YEAR

12. During the 2015-2016 school year, H.C. attended S.C. Lee Middle School("SCLM") within the CCISD.

13. When H.C. was a student at S.C. Lee Middle School("SCLM") she observed a tradition called "Titty Twister Thursday" and "Slap Ass Friday" or "Slab Butt Friday."

14. H.C. knew of girls who had their breasts twisted to the point of pain and bruising.

15. On Fridays, H.C. observed girls who were "slapped" on their buttocks, the back of their things and lower backs.   These vulgar traditions were well-known throughout the school community.

16. Like these other girls, H.C. was also a victim of sexual harassment while a student with the CCISD.

17. In the Fall of 2015, H.C. was a student at S.C. Lee Middle School.

18. H.C. was told that if someone was bullying or harassing her, she should report the problem to the school counselor.

19. On or about September 28, 2015, H.C. prepared a written statement for CCISD officials that a male student M.M. was groping her during school hours, was forcefully kissing her without her consent, and was grabbing her butt while walking through the halls and even during class.   M.M. was doing these vulgar acts to H.C. at least two times a day and often daily.

20. H.C. was directed to complain to her School Counselor, Maria Velard.   She did so easily over a two dozen times, but nothing ever came of it.

21. Then, or about October 9, 2015, H.C. told her that her mother that M.M. had not stopped groping her.

22. Ms. Cook informed M.M.'s mother that M.M. was repeatedly groping H.C. despite her protests.

23. H.C. also revealed to her mother that another male student, J.J. had been rubbing her vaginal area through her pants at school.   She explained that J.J. touched her at school

repeatedly, which made her feel "dirty". J.J. did it during computer class.

24. The following day, Ms. Cook filed a police report against M.M. and J.J. for sexual assault. It was H.C.'s understanding that Officer Georgette Hurt said she would contact CCISD school officials. If so, she never received any information on this topic.

25. On or about October 12, 2015, H.C.'s parents went to CCISD and spoke with Principal, Mrs. Love and CCISD counselor Maria Velarde about the two boys who sexually assaulted H.C. They requested that H.C. and the boys be in separate classrooms while at school. H.C.'s parents told Mrs. Love and Mrs. Velarde the harassment was so bad that H.C. did not want to go to school anymore.

26. Ms. Velarde and Ms. Love advised H.C.'s parents that they would "look into" the situation and see what they could do regarding H.C.'s classes.   H.C.'s parents do not believe CCISD school officials ever did a thing, as there was never any follow up with H.C. or themselves by Velarde, Love or others.

27. As a result of the assaults, on or about October 16, 2015, Ms. Cook took H.C. to a medical provider for sexually transmitted infections/diseases (STIs/STDs).

28. On or about October 20, 2015, H.C. came home from school crying due to J.J.'s incessant bullying and harassment. The following day, Ms. Cook called CCISD and made another request for H.C. and the two boys who assaulted her to be separated, but again nothing happened.

29. Later that month, J.J. started false rumors that he had "laid" H.C.

30. When H.C. confronted J.J. about the rumors, J.J. laughed at H.C. and he refused to stop

*Plaintiffs' First Original Complaint and Jury Demand*

harassing her with these lies.

31. On or about October 30, 2015, Ms. Cook went to S.C. Lee Middle School ("SCLM") and spoke with CCISD Assistant Principal Patrick Crawley about the District's failure to address the ongoing bullying and verbal harassment, and sexual and physical harassment by M.M. and J.J., which was still going on daily. Mr. Crawley said "we are still looking into it" but again, neither H.C. nor her mother believe he ever did a thing like those before him.

32. Even though no formal investigation was completed Mr. Crawley, who was also the Discipline Officer, replied that he had done everything that he could do.  He asked Ms. Cook to tell H.C. to stop confronting Student J.J. about the rumors previously mentioned, essentially putting the responsibility on H.C. to stop the ongoing abuse.

33. Between about November 2015 through January 2016, Ms. Cook contacted CCISD multiple times requesting that H.C. be in separate classes from M.M. and J.J.  Nothing was ever done.   CCISD refused each of Ms. Cook's requests.

34. Finally, to appease Ms. Cook, in early January 2016, CCISD "separated" H.C. from the regular educational environment and isolated her by placing her in a Special Needs Classroom for significantly disabled students.   In a since they were *effectively punishing H.C. for being assaulted by M.M. and J.J.*  M.M. and J.J. were permitted to continue in the regular non-restricted environment. With this act the District essentially admitted they could not keep H.C. safe from M.M. and J.J. in the normal educational environment.

35. By then, it was clear to Ms. Cook that CCISD would do nothing to help her daughter.

*Plaintiffs' First Original Complaint and Jury Demand*

H.C.'s parent then transferred H.C. to Copperas Cove Junior High School ("CCJH")-a different school in CCISD. H.C. began school there in January 2016. H.C.'s parent was hopeful that H.C. would no longer be victimized at this new school.  Sadly, it become apparent that the issues at CCISD were not limited to S.C. Lee Middle School("SCLM") and were pervasive and systemic at the CCJH as well.   H.C. continued to be victimized.

## C.  SEXUAL HARASSMENT CONTINUES AT COPPERAS COVE JR. HIGH SCHOOL

36. On January 11, 2016, H.C. started school at Copperas Cove Junior High School ("CCJHS").

37. First, she noticed that the Titty Twister Thursday and Slap Butt Friday continued at this school as well making her very anxious about this new hostile environment.

38. Second, and soon after H.C. transferred to CCJH, Ms. Cook learned that M.M. would be transferring to CCJH also.  Ms. Cook then spoke with Assistant Principal Kearney and asked that M.M. not be transferred to the same school that H.C. was attending, and that H.C. had just left S.C. Lee Middle School ("SCLM") to get away from him.   Nevertheless, Assistant Principal Kearney advised Ms. Cook that M.M. was required to be transferred, because he was considered "high risk" at the S.C. Lee Middle School ("SCLM") due to him running away from school and not because of his victimization of H.C. Here the failure to have a record of the previous problems at S.C. Lee Middle School ("SCLM") made it more difficult for Ms. Kearney to address H.C.'s needs.

39. Then, on or about April 15, 2016, another male CCJH student named W.O. groped H.C. in art class.   He would touch her breasts and legs without her consent.

*Plaintiffs' First Original Complaint and Jury Demand*

40. When H.C. told her art teacher, Mr. Love about the incident and requested that she be moved away from Students W.O., Mr. Love blamed H.C. for Student W.O.'s conduct and stated that she "brought it on [her]self".

41. Another student R.R. told H.C. that "she has a thick ass baby" and "I want to fuck you in the ass and cum inside you."

42. That day, Ms. Cook spoke with CCISD Assistant Principal Julie Kearney about the incident involving Students W.O. and R.R. She requested that H.C. and Students W.O. and R.R. be separated.

43. Ms. Kearney advised Ms. Cook that there would be *no contact* between H.C. and Students W.O. and R.R., but that turned out to be a false promise.

44. In fact, just like with M.M. and J.J. at the S.C. Lee Middle School ("SCLM"), H.C. was forced to endure the ongoing harassment of these male students because no one ever investigated the case or removed each boy from the class or punished them for their behaviors.

45. Over the course of the years, H.C. made numerous complaints about being sexually harassed by M.M., J.J. and W.O. and she and her mother complained to CCISD school officials, and to her knowledge, school staff failed to investigate any of the allegations that H.C. was a victim of bullying, harassment, sexual harassment and sexual assault.

46. In addition, the District did not take any prompt steps to end the bullying, harassment, sexual harassment, and sexual assault H.C. was experiencing.  CCISD did nothing to eliminate the hostile sexual environment H.C. was experiencing.  They did nothing to

prevent the ongoing bullying, harassment, sexual harassment, and sexual assaults.

**D.  2018-2019 SCHOOL YEAR**

47. H.C. attended the Copperas Cove High School in the Fall of 2017.

48. H.C. again noticed that the Titty Twister Thursday and Slap Butt Friday continued at the high school and continued to be anxious.

49. On September 5 and 6 of 2018, another CCISD student at CCHS-R.R.-sexually harassed H.C. and told her things such as "[y]ou have a thick ass, baby," and "I want to fuck you in the ass and cum inside."

50. Even though J.J. had sexually harassed H.C. for almost a full semester, and often two times a day forcing H.C. to change school and staff were aware of the problem, he was still placed in her Math and English classes.

51. If there had been a formal investigation the years before, and a formal report in both his and H.C.'s records, this likely never would have happened.

52. H.C. was visibly shaken and reported the sexual harassment to her mother and also CCISD staff.

53. In October 2018 Ms. Cook sent a letter to Assistant Principal Simecek providing notice that J.J. was bullying, harassing, and sexually harassing H.C., which was causing her severe anxiety.

54. As before, nothing was done.   H.C. had to suffer in silence.

55. In November of 2018, H.C. explained to CCISD officials the ongoing sexual harassment and sexual assault inflicted upon her by J.J., which dated back to her 8th grade year.   She

explained how she experienced extreme anxiety when she saw J.J. and even more when he attempted to speak to her.

56. Shortly thereafter, Ms. Cook emailed Ms. Simecek regarding the status of a safety plan for H.C. Mr. Simecek responded that a "stay away" agreement would be implemented, but that it would only cover "non-essential communication"-it failed to address the facts that H.C. shared 3 classes with J.J.

57. The "stay away" agreement was put into place on or about November 14, 2018, and only applied to lunches and extracurricular activities. But it was ineffective. J.J. continued to bully, harass, and sexually harass H.C.-and now he was also bullying and retaliating against her for reporting his conduct. So, the "stay away" agreement was not only ineffective-it made the situation even worse for H.C. and more vulnerable to the harassment.

58. On or about December 10, 2018, Ms. Cook emailed Mr. Simecek and reported the continued bullying, harassment, and sexual harassment by J.J. But Mr. Simecek emailed Ms. Cook thereafter that he was unable to confirm her report, even though to her knowledge he failed to investigate her concerns.

59. On or about December 18, 2018, H.C. prepared for CCISD a written statement that J.J. continued to harass her, and she pleaded for help. But again, CCISD staff did nothing.

60. Throughout the spring of 2019, H.C. continued to be incessantly bullied, harassed, and sexually harassed despite the sham "stay away" agreement.

61. And Ms. Cook and H.C. continued to seek help from CCISD. But CCISD remained indifferent and dismissive.

*Plaintiffs' First Original Complaint and Jury Demand*

62. On or about February 8, 2019, Ms. Cook emailed Mr. Simecek to inform him that despite the stay away agreement being in place for Student J.J., Ms. Leate sent H.C. and Student J.J. to the library together. She again expressed her concern with Student J.J. being near her daughter.

63. Over the course of a few years when H.C. was being bullied and harassed on almost a daily basis, CCISD failed to protect H.C.

## D.   CCISD'S FAILURES

64. CCISD failed to promptly take appropriate interim actions upon notice of allegations that H.C. was a victim of bullying, harassment, sexual harassment, and sexual assault.

65. CCISD failed to investigate any of the allegations that H.C. was a victim of bullying, harassment, sexual harassment, and sexual assault pursuant to both federal and state jurisprudence as well as CCISD policies and procedures and including but not limited to Title IX.

66. CCISD failed to take prompt and effective steps reasonably calculated to end the bullying, harassment, sexual harassment, and sexual assault to H.C., eliminate the hostile environment created by such events and its effects, and prevent future bullying, harassment, sexual harassment, and sexual assault to H.C. Such failures by CCISD, in addition to and separate from the actual bullying, harassment, sexual harassment, and sexual assault experienced by H.C., created a hostile educational environment for H.C.

67. CCISD failed to minimize the burden on H.C. with respect to actions taken after notice that H.C. was a victim of bullying, harassment, sexual harassment, and sexual assault.

*Plaintiffs' First Original Complaint and Jury Demand*

68. CCISD failed to provide the family notice of their procedural rights, as set forth by the regulations promulgated under the School Board Policies and Procedures regarding bullying, harassment and sexual harassment.

69. CCISD failed to provide the family information about who the Title IX Coordinator was for the District or H.C.'s rights under Title IX.

70. CCISD failed to provide H.C.'s family information regarding their rights to file a formal grievance with CCISD.

71. CCISD failed to provide H.C.'s family information regarding their right to file a formal complaint with the Texas Education Agency ("TEA").

72. CCISD failed to provide H.C.'s family information regarding their right to file a formal complaint with the Office of Civil Rights in a timely manner.

73. CCISD failed to provide H.C. with counseling, or psychological services or any of the remedies required under CCISD School Board's own policies and procedures for students whom have been victims of bullying, harassment and sexual harassment and sexual assault.

74. CCISD failed to address the impact of the bullying, harassment, sexual harassment, and sexual assaults on H.C.

75. CCISD failed to remediate the negative effects of the bullying, harassment, sexual harassment, and sexual assaults on H.C.

76. CCISD failed to remediate the negative effects of CCISD's own failure to respond to the bullying, harassment, sexual harassment, and sexual assaults on H.C.

77. CCISD failed to provide and was indifferent to H.C.'s right to be educated in a safe and non-

*Plaintiffs' First Original Complaint and Jury Demand*

hostile educational environment.

78. As a result of the acts and omissions of CCISD, H.C. suffered and continues to suffer from

fear, anxiety, and negative changes to self-esteem and self-worth.

## XI. STATE ACTION

79. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

80. The District, in any capacities and in all matters, acted under color of federal and state law when it permitted Plaintiffs to be subjected to the wrongs and injuries set forth herein.

## VI. CLAIMS PURSUANT TO 20 U.S.C. §§ 1681-1688 AND TITLE IX OF THE EDUCATION AMENDMENTS ACT OF 1972

81. Plaintiffs incorporate by reference all the above-related paragraphs above with the same force and effect as if herein set forth.

82. Plaintiffs contend the District, acting under color of law and acting pursuant to customs and policies of the district, deprived H.C. of rights and privileges secured to her by Title IX of the Education Amendments Act of 1972 and by other laws of the United States by discriminating against her on the basis of sex and gender stereotypes.

83. The acts and omissions of the school district deprived H.C. of her right to not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, on the basis of her sex or gender stereotypes for which the District Defendant is liable to H.C. pursuant to 20 U.S.C §1681-1688 for compensatory damages.

## X. CLAIMS PURSUANT TO THE

*14*

*Plaintiffs' First Original Complaint and Jury Demand*

## 14TH AMENDMENT OF THE U.S. CONSTITUTION

84. Plaintiffs incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

85. Plaintiffs asserts that CCISD failed to sufficiently train staff to address the needs of a student with a disability like H.C., thereby violating her rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which she seeks recovery pursuant to 42 U.S.C. §1983.

86. In addition, Plaintiffs contends that CCISD failed to sufficiently supervise staff regarding addressing the needs of children in general– and especially a student with a disability like H.C.

87. Such failures by CCISD were a moving force in violating the rights of H.C., as contemplated by Due Process of the Fourteenth Amendment of the Constitution of the United States, for which she seeks recovery pursuant to 42 U.S.C. §1983.

## XII.   RATIFICATION AND RESPONDENT SUPERIOR

88. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

89. Copperas Cove ISD ratified the acts, omissions and customs of school district personnel and staff.

90. As a result, Copperas Cove ISD is vicariously responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of H.C. pursuant to the Theory of Respondent Superior.

## XIII.   PROXIMATE CAUSE

91. Plaintiffs incorporate by reference all the above related paragraphs with the same force and

*Plaintiffs' First Original Complaint and Jury Demand*

effect as if herein set forth.

92. Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIV.   DAMAGES

93. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

94. As a direct and proximate result of the School District's deliberate indifference, H.C. has suffered injuries and damages, for which she is entitled to recover herein including but not limited to:

a.   Loss of equal opportunities to educational services and benefits as compared to her peers in the past;

b.   Loss of equal opportunities to educational services and benefits as compared to her peers in the future;

c.   Physical pain in the past;

d.   Medical expenses in the past;

e.   Medical expenses in the future;

f.   Mental anguish in the past;

g.   Mental anguish in the future;

h.   Physical impairment in the past; and

i.   Various out-of-pocket expenses incurred by her family but for the acts and omissions of the School District.

## XV. ATTORNEY FEES

95.  Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

96.  It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §2000d et seq. and 42 U.S.C. §1988.

## XVI. SPOLIATION

97.  Plaintiffs hereby require and demand that Copperas Cove ISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations that make the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the violations set forth herein.

98.  Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVII. DEMAND FOR JURY TRIAL

99.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XVIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against the District in the manner and particulars noted herein and above, and in an amount sufficient to fully compensate them for the elements of damages noted herein and above, judgment

for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action and for its appeal if required, together with pre- and post- judgment interest and court costs expended herein, as well as the equitable issues noted herein and above; and for such other relief as the Court, in equity, deems just and proper.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Mr. Martin J. Cirkiel, Esq.
SBN 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

**ATTORNEYS FOR PLAINTIFFS**

*18*

*Plaintiffs' First Original Complaint and Jury Demand*